UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JEFFERY C. CLARK                                              CIVIL ACTION

VERSUS

THE STATE OF LOUISIANA, ET AL.                                NO. 00-0956-JJB-RLB

**O R D E R**

Pursuant to Order dated August 8, 2014 (R. Doc. 119), the Court granted, in part, the plaintiff's Motion to Compel Responses to Discovery (R. Doc. 100) but deferred consideration of the plaintiff's Production Requests Nos. 3(a) and (b) and 4(a) and (b), which Requests sought copies of "[d]ocuments used for the training of corrections officers and/or wardens at LSP" during the year preceding the events at issue, and the "rules, policies, procedures, standards or protocol[s] in effect at LSP" at the time of those events, specifically pertaining to "how corrections officers and/or deputy sheriffs should respond to hostage events, or escape attempts ... [or] inmate fights, altercations, or violence." The defendants objected to the production of this documentation, *inter alia*, because dissemination of same within the prison community presented a potential threat to the security of the institution and to public safety. Whereas the Court found that the defendants' assertions in this regard, more than 13 years after the occurrence of the events complained of, were conclusory and unsupported by anything more than speculation and conjecture, the Court deemed it advisable to allow further briefing relative to this issue in light of (1) the possibility that the policies and procedures in effect at the time of

the events complained of are similar to or identical to those currently in effect, and (2) the potential that dissemination within the prison environment of policies and procedures relative to hostage events and escape attempts could negatively impact upon the security of the institution. Accordingly, the Court directed the defendants to file, within thirty (30) days of the date of the Order, a supplemental memorandum addressing the alleged potential threat to security presented by production of the referenced documentation. The Court further granted leeway to the parties, if so inclined, to reach an accommodation allowing for the exchange of the requested documentation between the attorneys, subject to restrictions upon dissemination of specific sensitive documentation within the confines of the prison environment. *See, e.g., Betzer v. Stephens*, 2003 WL 22175993, \*6 (E.D. La. Sept. 19, 2003) (providing for the production of rules, regulations and or policies "pursuant to a confidentiality agreement"). The defendants have now responded to the Court's directive, and the plaintiff has filed a memorandum in response thereto.

Based upon the defendants' supplemental memorandum and related showing, the Court finds that there is an adequate basis for maintaining the confidentiality of the requested documentation. Whereas the defendants have invoked the common law concept of "executive privilege" in support of their objection to disclosure, this privilege generally applies more to protect the deliberative or decision-making process of the executive. Accordingly, the Court finds more appropriate the common law concept of "official information privilege" in the instant context. This latter privilege "may be invoked by governmental entities to protect otherwise discoverable material[s] .... that are usually said, in justification of the privilege, to contain sensitive and confidential governmental information." *Nguyen v. Jefferson Parish Sheriff's*

*Department*, 1992 WL 91925, *1 (E.D. La. April 16, 1992). "In concept, the official information privilege aims to balance the need for confidentiality of government information against the need of the litigant to obtain the information." *Id.* This privilege has been specifically invoked in the context of attempts to obtain discovery of prison security procedures which may potentially impact upon the safety of security officers and inmates within the correctional environment. *See, e.g., Whittington v. Sokol*, 2008 WL 435277 (D. Colo. Feb. 14, 2008). In conducting the pertinent balance between the government's wish for confidentiality and the parties' need for discovery, courts often utilize the test stated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D. Pa. 1973), cited with approval by the Fifth Circuit in *Caughlin v. Lee*, 946 F.2d 1152, 1159-60 (5th Cir. 1991). Under the test espoused in *Frankenhauser*, which addressed the discoverability of investigative law enforcement files in a civil rights case, the Court looks to:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;     (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case.

59 F.R.D. at 344.

Undertaking the *Frankenhauser* analysis in this case, the Court agrees with the defendants that the requested documentation should remain confidential and should not be disclosed in discovery. Specifically, the instant case deals with an escape attempt undertaken by several inmates in December, 1999, that resulted in the taking of inmates and security officers as

hostages at a maximum security correctional institution and resulted, ultimately, in the death of an inmate and a security officer. The plaintiff is one of the inmates who has been found to have participated in the referenced escape attempt, and his claim relates principally to alleged excessive force utilized against him after the escape attempt was brought under control. The defendants have introduced the affidavit of the prison's Assistant Warden of Security, Joseph Lamartiniere, who attests that he has reviewed and is familiar with the Department's guidelines, procedures and policies relative to responding to attempted inmate escape attempts, hostage situations and inmate violence, including "Directive No. 09.025 - Hostage Plan, Directive No. 03.024 - Critical Incident Stress Management, Department Regulation No. C-02-002 - Institutional Riot, Significant Disturbance or Hostage Situation, and Department Regulation No. A-01-008 - Incident Management Center." *See* R. Doc. 120-1. The affiant further attests that the written policies and procedures in effect in 1999 are essentially identical to those in effect today. *Id.* Finally, the affiant states his opinion that "[t]hese directives and regulations are vital to the safety of Department staff and inmates when responding to and diffusing hostage situations, escape attempts and other violent incidents," that "[i]t is imperative that prison inmates not be made aware of the Department's policies and guidelines" relative to such incidents, that "[d]issemination of these directives and regulations ... into the prison environment will endanger Department staff, endanger inmates, encourage inmate escape attempts, and encourage hostage situations," that "[s]hould inmates be made aware of the procedures and guidelines employed by Department staff when handling an escape attempt or hostage situation, they will be better able to plan and carry out escape attempts and the taking of hostages," and that, "[w]hen diffusing an escape attempt or hostage situation, it is important for a security

officer to know that the escapees and/or hostage takers do not know the procedures to be employed in order to diffuse of the situation." *Id.*

Based on the foregoing compelling showing, and considering the gravity of the danger presented to prison security officers when they are faced with an escape attempt, hostage-taking, riot or other dangerous and highly charged incident within the prison context, the Court accepts the rationale put forth by the defendants for maintaining the confidentiality of the referenced documentation. Moreover, the Court finds, on balance, that the referenced documentation is of limited relevance in this case in any event inasmuch as the plaintiff has asserted, in pleadings before this Court, that the injuries of which he complains occurred *after* the escape attempt and hostage-taking were brought under control and *after* the plaintiff was taken into custody by prison officials. *See* R. Doc. 115 at p. 3 (wherein the plaintiff asserts that, "after the termination of incident at the Louisiana State Penitentiary during which an officer was killed, he was beaten by the defendants or their employees, as punishment, as a deterrent, to coerce a confession, and in order to taint his testimony"). Thus, the written policies and procedures in place for addressing and responding to the occurrence of an escape attempt, hostage incident or riot may be seen to have only marginal significance in this case. Accordingly, as found by another court in addressing a similar discovery issue in the prison context:

> This court determines that the confidential [written policies] have little, if any, relevance to plaintiff's excessive force claim. The court also determines, based on [the Department Director's] affidavit, that the revelation of these procedures to plaintiff or other inmates would jeopardize the security of the institution. If inmates were to learn, for instance, how guards were trained to respond to a prison riot, they could more effectively circumvent security procedures, thereby presenting an even greater threat to the safety of prison employees and nonparticipating inmates.... Therefore, applying the balancing test of *Frankenhauser*, the court determines that institutional security far outweighs any need plaintiff may have for the confidential [written policies]. For this reason, the court DENIES plaintiff's motion to compel production of the [written policies].

*Castle v. Jallah*, 142 F.R.D. 618, 622 (E.D. Va. 1992) (citation omitted). Therefore, based on the foregoing,

**IT IS ORDERED** that the plaintiff's Motion to Compel Discovery (Rec. Doc. 100), be and it is hereby **DENIED IN PART**, such that the defendants shall not be compelled to produce the documentation requested in the plaintiff's Requests for Production Nos. 3(a) and (b) and 4(a) and (b).

Signed in Baton Rouge, Louisiana, on November 3, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**