UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JEFFREY C. CLARK                        CIVIL ACTION

VERSUS                                  NO. 00-0956-JJB-RLB

STATE OF LOUISIANA, ET AL

    DEPOSITION OF JEFFREY CAMERON CLARK, taken at LOUISIANA STATE PENITENTIARY, HIGHWAY 66, ANGOLA, LOUISIANA 70712, in the above-entitled cause on the 3rd day of June, 2015, commencing at 10:02 a.m.

REPORTED BY:
    CHERIE E. WHITE, CCR (LA), CSR (MS), RPR
    CERTIFIED COURT REPORTER

Amerson White
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond LA 70404   Fax 985.419.0799

```
 1   APPEARANCES:
 2
 3   ATTORNEYS REPRESENTING THE PLAINTIFF, JEFFREY C.
 4   CLARK:
 5
 6   THE JUSTICE CENTER
 7   636 Baronne Street
 8   New Orleans, Louisiana 70113
 9   Phone: (504) 529-5955 |Fax: (504) 558-0378
10
11   By: Mercedes Montagnes, Esquire
12   E-mail:  mmontagnes@thejusticecenter.org
13   By: Blythe Taplin, Esquire
14   E-mail:  btaplin@thejusticecenter.org
15
16   ATTORNEYS REPRESENTING THE DEFENDANTS, STATE OF
17   LOUISIANA, ET AL:
18
19   HYMEL, DAVIS & PETERSEN, L.L.C.
20   10602 Coursey Boulevard
21   Baton Rouge, Louisiana 70816
22   Phone: (225) 298-8118 | Fax: (225) 298-8119
23
24   By: L. J. Hymel, Esquire
25   E-mail:  ljhymel@hymeldavis.com
```

1   ALSO PRESENT:
2
3        Ryan Falgoust, Esquire
4        Jessica Bragg, Paralegal
5        Ariel Spierer
6        Mike Barry, Security Guard

```
 1              E X A M I N A T I O N   I N D E X
 2
 3      BY:                                           PAGE
 4
 5          Mr. Hymel                                    6
 6          Ms. Montagnes                              111
 7          Mr. Hymel                                  135
 8
 9                      E X H I B I T S
10
11      NO.     DESCRIPTION                           PAGE
12
13      1       Handwritten Note                        90
14      2       12/30 Medical Record                    99
15      3       1/13 Medical Record                    102
16      4       Physician's Report                     104
17      5       Report by Dr. Tarver                   105
18
19
20
21
22
23
24
25
```

1          S T I P U L A T I O N
2
3      IT IS HEREBY STIPULATED AND AGREED by and
4  between counsel for the parties hereto that the
5  deposition of the aforementioned witness is
6  hereby being taken under the Louisiana Code of
7  Civil Procedure, Article 1421, et seq., for all
8  purposes, in accordance with law;
9      That the formalities of reading and signing
10 are specifically NOT waived;
11     That the formalities of sealing,
12 certification and filing are specifically waived;
13     That all objections, save those as to form
14 of the question and the responsiveness of the
15 answer, are hereby reserved until such time as
16 this deposition, or any part thereof, may be used
17 or sought to be used in evidence.
18              *  *  *  *
19     CHERIE E. WHITE, Certified Court Reporter,
20 in and for the Parish of Orleans, State of
21 Louisiana, officiated in administering the oath
22 to the witness.
23
24
25



AmersonWhite
COURT REPORTING & LITIGATION SUPPORT
866.870.7233   P.O. Box 1554 Hammond LA 70404   Fax 985.419.0799

```
 1          Q.    This is a physician's report
 2   indicating a healed abrasion on your right shin.
 3   The inmate stated that "the only injuries he
 4   sustained at the time of the incident was an
 5   abrasion of the right shin that is healed and
 6   contusions to his thighs that no longer bother
 7   him."  Do you recall that -- that record?
 8          A.    I recall meeting that doctor.  I
 9   told him more than that.  That's what he noted on
10   there, but I told him more than that.
11          MR. HYMEL:
12                All right.  We'll mark it as
13          Exhibit 4; Exhibit 5 being a report by
14          Dr. Tarver.  This is basically a summary
15          of your treatment.  At the bottom line,
16          the examination and subsequent X-ray were
17          normal and that there are no health notes
18          documenting any -- documenting any mental
19          or physical complaints.  I'll attach that
20          as Exhibit 5.
21        (Document marked and tendered.)
22   BY MR. HYMEL:
23          Q.    Now, you understand -- I'm sure
24   you've spoken with your lawyers -- that
25   opposition is that these injuries that are
```

```
 1   reflected in the photographs that Mr. Burton has
 2   given to us, you understand it's our position --
 3   and I think it's the same position that they took
 4   at the criminal trial -- that these injuries were
 5   self inflicted?
 6        A.   That's what you-all --
 7        Q.   You understand that?
 8        A.   That's you-all's position, yes.
 9        Q.   Looking at your medical records, I
10   see that back in 1988 you received a disciplinary
11   report for self mutilation; am I correct?
12        A.   Yes, sir, that's true.
13        Q.   And that's an incident where you put
14   some battery acid on a finger on your left hand
15   and basically I think that finger had to be
16   amputated or removed, or what exactly occurred?
17        A.   That was I put battery acid on my
18   finger and it was ordered in to have it
19   amputated.
20        Q.   And you -- according to the reports,
21   you did this because you were upset that your
22   mother hadn't hired you a lawyer?
23        A.   No.  You are totally wrong on that.
24        Q.   All right.  Why did you do it?
25        A.   Okay.  In work line -- it was just
```

```
 1   staying, keep staying on the work line that I was
 2   assigned to, to be honest.  If you're a member of
 3   a work line, you can get extra food out there and
 4   canteen.  I was taken off the line and I wanted
 5   the supervisor to come and I was not aware if he
 6   was going to come.
 7           Q.   So you were upset and, because of
 8   being upset, you mutilated your finger?
 9           A.   I got pissed and I mutilated my
10   finger, yes, sir.
11           Q.   And disciplinary wise, about a year
12   before that you were disciplinary charged with
13   threat to security on that planned escape that
14   we've already talked about; am I correct?
15           A.   I'm sorry.  Can you repeat it?
16           Q.   November 15th, 1987, disciplinary
17   wise you were charged with a threat to security
18   having planned an escape?
19           A.   That's what they charged me with,
20   yes.
21           Q.   Now, insofar as your administrative
22   remedy procedures, you have -- you are pretty
23   knowledgeable of those processes and procedures;
24   am I correct?
25           MS. MONTAGNES:
```

```
 1                  Objection, relevance.
 2          THE WITNESS:
 3                  I'm familiar with the procedures.
 4   BY MR. HYMEL:
 5          Q.    Well, part of the lawsuit is that
 6   he's complaining being denied administrative
 7   remedy processes; am I correct?
 8          A.    I believe that's one of the
 9   complaints.
10          Q.    I mean if you want to withdraw that
11   complaint, then I won't ask any questions about
12   it.
13          MS. MONTAGNES:
14                  Go ahead.
15   BY MR. HYMEL:
16          Q.    You're fairly knowledgeable about
17   the administrative procedures process; am I
18   correct, remedy process?
19          A.    To the Department of Corrections ARP
20   process, yes, sir.
21          Q.    And as a result of -- of these
22   meetings that you've told us about, you did file
23   an ARP; am I correct?
24          A.    I did, sir.
25          Q.    And how many steps in an ARP
```